DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                    Plaintiff,

            -against-

THREE MY CORP. d/b/a SDQ LOUNGE and DIGNO
TORRES,

                   Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

17-CV-3383 (NGG) (JO)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff J & J Sports Productions, Inc., initiated this action on June 6, 2017, asserting claims under Sections 553 and 605 of the Communications Act of 1934 (the "Act"), 47 U.S.C. §§ 553, 605, against Defendants Three MY Corp., doing business as SDQ Lounge (the "Defendant Establishment" or "SDQ"), and Digno Torres. (Compl. (Dkt. 1).) Defendants have not appeared in this action and have failed to answer or otherwise respond to the complaint.

Before the court is Plaintiff's motion for default judgment (Am. Mot. for Default J. ("Mot.") (Dkt. 14); see 1st Mot. for Default J. ("1st Mot.") (Dkt. 10)), which the undersigned referred to Magistrate Judge James Orenstein for a report and recommendation ("R&R"). (Jan. 17, 2018, Order Referring 1st Mot.; see Feb. 7, 2018, Order Noting Referral of Mot.) On September 5, 2018, Judge Orenstein issued an R&R in which he recommended that the court grant the motion as to the Defendant Establishment but deny it as to Torres and award Plaintiff $1440.00 in damages and costs. (See R&R (Dkt. 23).) Plaintiff timely objected to the R&R, arguing that the court should reject Judge Orenstein's recommendation as to liability for Torres. (See Pl. Obj. (Dkt. 25).) Defendants have not responded to Plaintiff's objection and the time to do so has passed. For the following reasons, the court OVERRULES Plaintiff's objection,

1

ADOPTS the R&R, and accordingly GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.

## I. BACKGROUND

### A. Factual Allegations

Because Defendants have defaulted, the court "is required to accept all of [Plaintiff's] factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); see Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187-88 (2d Cir. 2015).

Plaintiff entered into a closed-circuit television license agreement whereby Plaintiff received exclusive rights to exhibit and sublicense the June 7, 2014, Middleweight Championship Fight Program between Miguel Cotto and Sergio Martinez, including undercard and preliminary bouts (collectively, the "Event"). (Compl. ¶ 7.) The transmission of the Event was electronically coded such that it could only be received using special decoding equipment. (Id. ¶ 12.) Establishments that contracted with Plaintiff—or with Plaintiff's sublicensee, G & G Closed Circuit Events, Inc.—were entitled to televise the Event, and were provided with the necessary decoding equipment. (Id. ¶¶ 13-14.)

The Defendant Establishment is a corporation organized under the laws of New York and authorized to transact business as SDQ Lounge from its principal place of business in Brooklyn, New York. (Id. ¶ 5.) Plaintiff alleges that Torres is an "officer, director, shareholder, and/or principal" of the Defendant Establishment. (Id. ¶ 5.) Defendants never contracted with Plaintiff to screen the Event. (Id. ¶ 13.) Nonetheless, on June 7, 2014, Defendants intercepted the interstate communication of the Event and screened it within the Defendant Establishment. (Id. ¶ 15.) An investigator observed that approximately 45 patrons were present in the Defendant

2

Establishment during the screening of the Event. (Audit Report of Maria Osgood (Dkt. 15-3).)

The Defendant Establishment did not charge a cover for entry during the Event. (Id.)

### B. Procedural History

Plaintiff filed its complaint in this court on June 6, 2017 (Compl.), and service was properly executed on each defendant (Summons (Dkt. 5)). Defendants failed to appear or answer. On October 10, 2017, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Clerk's Entry of Default (Dkt. 9).) Plaintiff moved for default judgment on November 8, 2017, seeking an order of default judgment awarding statutory damages, enhanced damages, and litigation costs (exclusive of attorney's fees). (See 1st Mot.; Mem. in Supp. of 1st Mot. (Dkt. 11).) The undersigned referred Plaintiff's motion to Judge Orenstein for an R&R. (Jan. 17, 2018, Order Referring 1st Mot.; see Feb. 7, 2018, Order Noting Referral of Mot.) Plaintiff subsequently submitted an amended motion for default judgment. (Mot.; Mem. in Supp. of Mot. ("Mem.") (Dkt. 15).)

On May 21, 2018, Judge Orenstein scheduled a hearing to determine the amount of damages and requested that Plaintiff's investigator, Maria Osgood, appear to give testimony. (May 21, 2018, Order.) Following a hearing on June 29, 2018, Judge Orenstein permitted Plaintiff to submit a supplemental memorandum of law and exhibits to address issues raised at the hearing, including as to the proper measure of damages. (See June 29, 2018, Min. Entry (Dkt. 20).) Plaintiff timely submitted a supplemental filing. (See Pl. Aug. 14, 2018, Letter (Dkt. 21); Pl. Suppl. Mem. of Law ("Suppl. Mem.") (Dkt. 21-1).)

On September 23, 2018, Judge Orenstein issued an R&R recommending that the court grant in part and deny in part Plaintiff's motion. (See R&R.) First, as to the question of liability, Judge Orenstein recommended that the court hold the Defendant Establishment liable under the

Act but found that liability as to the Torres had not been established. (See id. at 3-5.) Second, as to the question of damages, Judge Orenstein recommended awarding Plaintiff $1440.00, consisting of $1000.00 in statutory damages and $440.00 in costs. (See id. at 5-8.)

Plaintiff timely objected to the R&R. (See Pl. Obj.) Plaintiff's sole ground for objection is the R&R's recommendation that the court deny the motion for default judgment as to Torres. (Id.) Defendants, as they have not appeared in this action, did not file a response to Plaintiff's objection, and the time to do so has passed.

## II. LEGAL STANDARD

In reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (internal citation omitted); see Impala v. U.S. Dep't of Justice, 670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision . . . ." (internal citation omitted)); Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the [R&R] has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks and citation omitted)). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (alteration adopted) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

4

The district court must review <u>de novo</u> "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); <u>see</u> Fed. R. Civ. P. 72(b)(3). To obtain this <u>de novo</u> review, an objecting party "must point out the specific portions of the [R&R]" to which objection is made. <u>Sleepy's LLC v. Select Comfort Wholesale Corp.</u>, 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); <u>see also</u> Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." <u>Pall Corp. v. Entegris, Inc.</u>, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citations omitted); <u>see also</u> <u>Mario v. P & C Food Mkts., Inc.</u>, 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

## III. APPLICATION

### A. Liability

As set forth above, Plaintiff objects to the R&R's recommendation that the court find the Defendant Establishment, but not Torres, liable. For the following reasons, the court OVERRULES Plaintiff's objection on this ground and GRANTS default judgment with respect to the Defendant Establishment only.

#### 1. The Communications Act of 1934

Section 605(a) of the Act provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." If Plaintiff successfully alleges that the Defendant Establishment violated Section 605, then Plaintiff may seek to impose liability on Torres under the theories of "vicarious liability" or "contributory infringement." <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.</u>, 118 F.3d 955, 971 (2d Cir. 1997). Vicarious

5

liability arises when a defendant had a "right and ability to supervise that coalesced with an obvious and direct financial interest." Id. (alterations adopted) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)). Contributory infringement arises when a defendant "authorized" the violations. Id. (citing Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984)).

2. The Defendant Establishment

Finding no clear error in the R&R's recommendation as to the Defendant Establishment's liability (see R&R at 3), the court grants Plaintiff's motion for default judgment with respect to the Defendant Establishment.

3. Torres

Plaintiff also seeks to hold Torres liable under Section 605 in his capacity as an officer, director, shareholder, or principal of the Defendant Establishment. (See Compl. ¶ 16.) Plaintiff makes no allegation of contributory liability, proceeding instead under a theory of vicarious liability. (See R&R at 3.)

The Supreme Court has stated that a "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In its complaint, Plaintiff makes boilerplate allegations that Torres "had a right and ability to supervise the infringing activities" and "an obvious and direct financial interest in the exploitation of the copyrighted materials." (Compl. ¶¶ 5, 16.) This "generic assertion[]," J & J Sports Prods., Inc. v. Crazy Willy's Bar, Lounge & Rest., Inc., No. 17-CV-1192 (NGG), 2018 WL 3629595, at *3 (E.D.N.Y. July 31, 2018), does not establish that Torres "was positioned to supervise the infringing broadcast, or directly participated in, authorized, or had knowledge of the violation."

6

J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15-CV-3771 (ILG), 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017). More is needed.

Regarding the first prong—right and ability to supervise—Plaintiff alleges that Torres is listed as the principal of SDQ on the liquor license on file with the New York State Liquor Authority. (Compl. ¶ 16.) The court need not decide whether this allegation sufficiently establishes a "right and ability to supervise the infringing activities" because Plaintiff has failed to satisfy the second prong of the test for vicarious liability: an "obvious and direct financial interest." See J & J Sports Prods., Inc. v. LX Food Grocery, Inc., No. 15-CV-6505 (NGG), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016).

The court agrees with Judge Orenstein that "the evidence of a cover charge, or of larger-than-usual patronage indicative of increased sales, bolsters the proposition that the owner stood to gain financially by virtue of the FCA violations." (R&R at 4.) See Crazy Willy's, 2018 WL 3629595, at *4 (collecting cases). Plaintiff does not allege that the Defendant Establishment collected a cover charge. Plaintiff's auditor counted 45 patrons present at the Defendant Establishment during the Event (see Pl. Obj. at 6), but this assertion is insufficient to establish Torres's financial gain. Plaintiff does not specify whether those patrons made any purchases, how this number compares to the number of patrons at the Defendant Establishment on a typical night, or how many of these patrons were actually watching the Event. See J & J Sports Prods., Inc. v. Classico Bar Inc., No. 16-CV-5639 (ADS), 2018 WL 1168582, at *4 (E.D.N.Y. Mar. 6, 2018). Contrary to Plaintiff's assertion, these holes in the complaint could not only be patched up with a round of discovery. (See Pl. Obj. at 6-7.) Just as the plaintiff's allegations were insufficient to support individual liability in Classico Bar—where there were 25 patrons at the defendant establishment during the event in question, but Plaintiff made no specific allegations

7

of financial interest by any individual beyond a "formulaic recitation of the elements of a cause of action," 2018 WL 1168582, at *1, *3-4 (quoting Iqbal, 556 U.S. at 678))—given the lack of supporting information establishing financial gain, so too is that the case here. While Plaintiff has shown the court an Instragam posting by SDQ that mentions the Event (see Instagram Posting (Dkt. 21-2)), Judge Orenstein correctly noted that "[t]he posting does little if anything to suggest that SDQ was relying on the program as the primary means to boost attendance and sales" and, besides, that the posting "is wholly silent as to Torres, and the record includes no evidence suggesting that Torres had any involvement in or knowledge of the posting." (R&R at 4-5.) Plaintiff adds that Osgood conducted her audit at the Defendant Establishment "during an undercard bout, and there is a reasonable inference that the patronage would have increased leading up to the main event between Miguel Cotto v. Sergio Martinez." (Pl. Obj. at 6.) But this assertion, even if true, does not address the lack of well-pleaded allegations necessary to support individual liability in this case. Finally, insofar as Plaintiff attempts to use the presence of Torres's name on the Defendant Establishment's liquor license to show their financial gain, the court rejects such an argument. See J&J Sports Prods., Inc. v. 88-18 Tropical Rest. Corp., No. 17-CV-2620 (DLI), 2018 WL 1701942, at *4 (E.D.N.Y. Mar. 30, 2018).

**B. Damages**

Plaintiff does not object to the R&R's recommendation that the court award Defendant $1000.00 in statutory damages. Following review for clear error, the court ADOPTS this portion of the R&R.

  1. <u>Statutory Damages</u>

Where, as here, a violation of Section 605 has occurred, a plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). Under Section 605, a plaintiff "may

8

recover an award of statutory damages for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). The determination of statutory damages is "in the sound discretion of the court." LX Food Grocery, 2016 WL 6905946, at *4. "Courts in the Second Circuit typically use either the 'flat-fee' method or the 'per-person' method to determine statutory damages under Section 605(e)(C)(i)(II), with the higher of the two amounts typically used for the award." Crazy Willy's, 2018 WL 3629595, at *5. "Under the 'flat[-]fee' method, the court calculates the amount that defendants would have paid in exchange for the right to show the Event legally—in this case, Plaintiff's licensing fee." LX Food Grocery, 2016 WL 6905946, at *4. "Under the 'per-person' method, damages are equal to the amount an individual consumer would have paid to view the Event pay-per-view, multiplied by the number of consumers who watched the illegally transmitted Event." Id.

The R&R rejected Plaintiff's proposed use of the per-person method, concluding that this method of estimating damages "is too speculative to be useful." (See R&R at 6-7.) Instead, finding that "[t]he only reliable evidence of [Plaintiff's] actual damages is that SDQ displayed the program without paying [Plaintiff] the $800.00 price of a commercial display license," the R&R recommended that the court award Plaintiff the statutory minimum of $1000.00. (Id. at 7.)

Plaintiff does not object to the R&R's recommendation of statutory damages. Finding no clear error in this portion of the R&R, the court adopts the recommendation that the court award Plaintiff $1000.00 in statutory damages.

2. Enhanced Damages

The court, "in its discretion[,] may increase the award of damages . . . by an amount of not more than $100,000 for each violation," if "the court finds that the violation was committed

9

willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The R&R found that there was "no reason to treble [Plaintiff's] damages based on [Defendants'] alleged willfulness" and recommended that the court not award enhanced damages. (R&R at 7-8.) Plaintiff does not object to this recommendation.

As this court has previously noted, "[t]he imposition of enhanced damages is a highly fact-specific inquiry, and courts have great leeway in determining a reasonable outcome." Crazy Willy's, 2018 WL 3629595, at *7. Accordingly, the court finds no clear error in this portion of the R&R and adopts the recommendation that the court not award enhanced damages.

### 3. Costs

Finally, Plaintiff seeks "$540 in costs, consisting of the $400.00 filing fee and $140.00 in process server fees." (R&R at 8.) The R&R recommended awarding Plaintiff $440 because "the record shows that [Plaintiff] paid $40.00 to serve SDQ via the New York Secretary of State[; h]owever, J & J has not submitted any proof for other service cost amounts." (Id. at 8.) Plaintiff does not object to this recommendation and, finding no clear error therein, the court grants Plaintiff's request for $440 in costs.

## IV. CONCLUSION

The court ADOPTS IN FULL the R&R (Dkt. 23) and GRANTS IN PART and DENIES IN PART Plaintiff's amended motion for default judgment (Dkt. 14). The court GRANTS Plaintiff's motion for default judgment against Defendant Three MY Corp, and DENIES Plaintiff's motion for default judgment against Defendant Digno Torres. The court AWARDS Plaintiff $1440.00 in damages, consisting of $1000.00 in statutory damages and $440.00 in costs. The Clerk of Court is respectfully DIRECTED to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 21, 2018

NICHOLAS G. GARAUFIS
United States District Judge

11